

# NUMBER 13-25-00346-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

VHS HARLINGEN HOSPITAL
COMPANY, LLC D/B/A VALLEY
BAPIST MEDICAL CENTER-HARLINGEN,
ADRIAN ALANIZ, AND KRISTEN WHITE,                    Appellants,

v.

ELIAZAR COSTILLA, INDIVIDUALLY
AND AS THE REPRESENTATIVE OF
THE ESTATE OF KRISTY RENEE
COSTILLA, DECEASED, AND AS NEXT
FRIEND OF A.J.C. AND C.K.C., MINORS;
MELINDA RODRIGUEZ LEAL AND
CAMILO TREVINO,                                       Appellees.

## ON APPEAL FROM THE 197TH DISTRICT COURT
## OF CAMERON COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Peña and West
Memorandum Opinion by Chief Justice Tijerina**

Appellants VHS Harlingen Hospital Company, LLC d/b/a Valley Baptist Medical Center-Harlingen (VBM), Adrian Alaniz, and Kristen White appeal the trial court's denial of their Chapter 74 motions to dismiss in a healthcare liability claim brought by appellees Eliazar Costilla, individually and as the representative of the estate of Kristy Renee Costilla, deceased, and as next friend of A.J.C. and C.K.C., minors; Melinda Rodiguez Leal and Camilo Trevino. By several issues, which we consolidate, appellants argue that appellees' amended expert reports failed to comply with Section 74.351 of Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE § 74.351 (providing for expert report requirements in health care liability actions); *id.* § 51.014(a)(9) (providing for interlocutory appeal of an order denying relief under Section 74.351). We reverse and render.

## I.  BACKGROUND[1]

The underlying proceeding arose following Kristy's death on September 25, 2018. On September 24, 2018, forty-one-year-old Kristy arrived at VBM with symptoms of a hemorrhagic stroke. Following a CT scan, Kristy was diagnosed with a subarachnoid hemorrhage (brain bleed) at 9:30 p.m., and she was transferred to the Intensive Care Unit at 11:50 p.m. At approximately 3:10 a.m., Kristy began experiencing seizures again. She was intubated and put on mechanical ventilation. Ultimately, her condition worsened, and she passed away at 5:01 p.m. on September 25, 2018.

On September 22, 2020, appellees filed a healthcare liability claim against several medical professionals and entities, including appellants.[2] According to appellees' petition,

---

[1] We repeat the facts from *Aguilera v. Costilla*, No. 13-21-00135-CV, 2023 WL 2711129, at *1 (Tex. App.—Corpus Christi–Edinburg Mar. 30, 2023, pet. denied) (mem. op.).

[2] The medical professionals and entities include Atiya Dhala, M.D., Alicia Hart, M.D., Wondwossen Tekle, M.D., Octavio Aguilera, the Schumacher Group of Texas, Inc., George Huddleston, IV, M.D., and William Taw M.D. Thus far, the following have been dismissed from appellees' healthcare liability claim: Dr. Dhala, Dr. Huddleston, Dr. Taw, Octavio Aguilera and the Schumacher Group of Texas, Inc.

nurses White and Alaniz failed to recommend to a physician the need for an emergency CT scan of Kristy's head after her neurological status deteriorated.

Appellees filed three expert reports by Van V. Halbach, M.D., Michael Griffith, R.N., and Erwin A. Cruz, M.D. in accordance with Section 74.351. *See id.* § 74.351(a). On October 14, 2020, appellants objected to the adequacy of the reports, that no CVs were attached to the expert reports, and that Dr. Halbach's report was unsigned. On April 1, 2021, appellants filed a motion to dismiss, asserting Dr. Cruz was unqualified to offer a nurse's standard of care opinion, his opinions were conclusory, and he failed to establish causation. They further asserted Griffith was unqualified to render an opinion on causation because he was not a physician. Lastly, they challenged Dr. Halbach's report asserting it was conclusory and vague, it failed to address Kristy's morbidity and mortality, and it failed to show harm but for their alleged negligent acts. The trial court denied their motions, and appellants appealed.

In 2023, this Court concluded the expert reports were insufficient regarding causation and remanded the case "to the trial court to consider whether a thirty-day extension should be granted." *Aguilera v. Costilla*, No. 13-21-00135-CV, 2023 WL 2711129, at *14 (Tex. App.—Corpus Christi–Edinburg Mar. 30, 2023, pet. denied) (mem. op.). However, the trial court did not rule on remand. Appellants objected to the trial court continuing to hold proceedings without ruling on whether it would grant appellees a thirty-day extension.[3]

In April 2025—two years after remand—appellees filed a "Post-appeal Motion Requesting Amendment of Chapter 74 Expert Reports." Appellants filed a "Motion to

---

[3] Appellants did not file a petition for writ of mandamus in this court seeking a trial court ruling. *See Ogletree v. Matthews*, 262 S.W.3d 316, 321 (Tex. 2007) ("[B]ecause the Legislature authorized a single, thirty[-]day extension for deficient reports, health care providers face only *a minimal delay* before a report's sufficiency may again be challenged and the case dismissed, if warranted.") (emphasis added).

Dismiss for Want of Prosecution." In the motion, appellants asserted that appellees requested one thirty-day extension to amend their expert report four years ago and failed to amend. Appellants asserted appellees "were on notice that there was a need for them to amend their expert reports yet failed to do so." According to appellants, because appellees failed to prosecute their case with amended reports for several years, the trial court should dismiss their case with prejudice.[4] The trial court granted appellees' "Post-Appeal Motion Requesting Amendment of Chapter 74 Expert Report," and appellees filed amended expert reports.

On May 12, 2025, appellants filed a second motion to dismiss challenging the adequacy of the amended expert reports, which the trial court denied. This appeal followed.

## II.    AMENDED EXPERT REPORTS

Appellants challenge the standard of care, breach of the standard of care, and causation elements of the expert reports.

## A.    Nurses White and Alaniz

In his expert report, Nurse Griffth states that Nurses White and Alaniz breached the standard of care by failing to: (1) recommend the need for an emergent head CT at 3:10 a.m. when Kristy suffered from seizure-like activity; (2) complete a head CT without contrast at 6:30 a.m. and waiting until 8:00 a.m.; and (3) maintain an euvolemic fluid status from 7:00 a.m. to 7:00 p.m.

Regarding causation, Section 74.403(a) provides:

in a suit involving a health care liability claim against a physician or health care provider, a person may qualify as an expert witness on the issue of the causal relationship between the alleged departure from accepted standards of care and the injury, harm, or damages claimed only if the person is a physician and is otherwise qualified to render opinions on that causal

---

[4] The trial court did not rule on this motion.

4

relationship under the Texas Rules of Evidence.

TEX. CIV. PRAC. & REM. CODE § 74.403(a). Because Nurse Griffith is not a physician, he does not satisfy the mandatory expert qualification to opine on causation pursuant to Chapter 74. *See id.*; *Aguilera*, 2023 WL 2711129, at *11 ("As a non-physician, Griffith may not opine on causation."). Thus, we limit our inquiry of causation to Dr. Cruz's and Dr. Halbach's expert reports. *See Kelly v. Rendon*, 255 S.W.3d 665, 675 (Tex. App.— Houston [14th Dist.] 2008, no pet.) ("[A] nurse is not qualified to render an opinion on medical causation.").

### 1. Dr. Cruz

In his amended expert report, Dr. Cruz did not discuss Nurse Alaniz or Nurse White, their roles in Kristy's care, or how their actions caused Costilla's death. Dr. Cruz stated that he reviewed Nurse Griffith's expert report, and he agrees that "the care given to [Kristy] totally breached the standard of care of neurological and neurosurgical care in the management of [Kristy's] intracranial bleed." Dr. Cruz "believe[s] that there were significant breaches in the standard of care that led to the final demise" of Kristy. He concluded that he "totally agree[s]" with Nurse Griffith, but "[u]nfortunately at the end, the breach in standard of care with this significant intracranial pathology ended up with an undesirable outcome, being the death of [Kristy]." This is the extent of his report. "A plaintiff asserting a health care liability claim based on negligence, who cannot prove that her injury was proximately caused by the defendant's failure to meet applicable standards of care, does not have a meritorious claim." *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017). Absent from Dr. Cruz's report is how the failure to recommend the need for an emergent head CT at 3:10a.m, the failure to complete a head CT at 6:30 a.m. rather than 8:00 a.m., and the failure to maintain an

euvolemic fluid status from 7:00 a.m. to 7:00 p.m. "led to the final demise" of Kristy. Therefore, we find Dr. Cruz's amended expert report insufficient regarding causation.

### 2. Dr. Halbach

Regarding causation, Dr. Halbach stated:

> I am familiar with the standard of care for nurses, and I believe that the breaches of standard of care identified for Nurses White and Alaniz were a proximate of cause of . . . [Kristy]'s death, including increased intracranial pressure, failure to maintain an euvolemic fluid balance, and failure to obtain scans on an emergent basis—these were a substantial factor in . . . [Kristy]'s death and without which it would not have occurred.

In other words, the breaches by White and Alaniz (as alleged by Nurse Griffith), including the failure to maintain fluid and failure to obtain timely scans, were a proximate cause of increased pressure that resulted in death.

However, "[a] report that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill" the two purposes of a good-faith effort. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001). In this regard, "a report cannot merely state the expert's conclusions . . . but the expert must explain the basis of his statements to link his conclusions to the facts"; "[a]n expert cannot simply opine that the breach caused the injury." *Jelinek v. Casas*, 328 S.W.3d 526, 536, 539 (Tex. 2010) (internal citations omitted). *Hollingsworth v. Springs*, 353 S.W.3d 506, 518–19 (Tex. App.—Dallas 2011, no pet.) ("Groudine was required to link these failed management responsibilities to Springs's injuries; his report was required to explain how the administrative breaches described proximately caused Springs's injuries.").

In *Clapp*, the appellate court stated:

> In essence, Dr. Herrera simply opines that one event caused another without explaining how the failure to insert a nasal-gastric tube resulted in aspiration, aspiration pneumonia, prolonged intubation with ARDS, multi-organ failure, and ultimately death. By opining that Perez died because Drs. Clapp and Gagot failed to insert a nasal-gastric tube before surgery, Dr. Herrera simply expressed his conclusion without stating the underlying facts

6

necessary to establish that the failure to place a nasal-gastric tube was a substantial factor in causing Perez's death, and that absent this failure, Perez would not have died.

*Clapp v. Perez*, 394 S.W.3d 254, 262 (Tex. App.—El Paso 2012, no pet.). We similarly conclude that Dr. Halbach failed to explain the basis of his statements linking his conclusion to the facts here. *See id.* Merely stating that the breaches as alleged by Griffith "were a proximate cause of [Kristy's] death" and "without which it would not have occurred" does not "explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented." *Jelinek*, 328 S.W.3d at 539–40. "Beyond that statement, the report offers no explanation of how the breach caused the injury." *Id.* at 540. Under these standards, the amended expert reports are conclusory regarding causation as they offer "no more than a bare assertion" and lack "any explanation liking the expert's conclusion to the relevant facts" that the breaches as alleged by Griffith resulted in Kristy's death. *Id.*

## B.    VBM

Appellants assert that the amended expert reports fail to establish vicarious liability and direct negligence claims against VBM. Because we found the amended expert reports insufficient regarding Nurses White and Alaniz, the amended expert reports cannot support a vicarious liability claim. *See Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671–72 (Tex. 2008) (providing that a vicarious liability claim fails when a report does not implicate the actions of that party's employees).

Regarding direct liability, only Dr. Halbach's report addresses VBM's alleged negligence:

> I am familiar with the standard of care of a hospital that is certified comprehensive stroke center, like [VBM]. The standard of care required VBH to have policies, personnel, training, and equipment available 24/7 so that they can attack a stroke quickly. They are required to have a neurosurgeon and a doctor who can perform endovascular surgery

7

available 24/7 to perform the type of surgery that Kristy Costilla needed. They failed to have that available. This was a substantial factor in Kristy Costilla's death and without which it would not have occurred.

Dr. Halbach states that VBM was required to have "policies, personnel, training, and equipment available 24/7" to "attack a stroke quickly." He then states VMB was "required to have a neurosurgeon and a doctor who can perform endovascular surgery available 24/7," but VBM "failed to have that available." It is unclear what Dr. Halbach is referring to when he states VMB failed to have "that" available.

"[A]n expert report must establish the causal relationship by proof that the negligent act or omission was a substantial factor in bringing about the harm and that absent said act or omission, the harm would not have occurred." *Clapp*, 394 S.W.3d at 261 "[T]he expert must explain the basis of his statements and link conclusions to specific facts." *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 224 (Tex. 2018). "[W]hether a defendant breached his duty cannot be determined absent specific information about what the defendant should have done differently." *Clapp*, 394 S.W.3d at 259.

Here, Dr. Halbach states this alleged failure was "a substantial factor in [Kristy's] death." This statement, although broad and sweeping in scope, is nothing more than his unsupported conclusion that the breach caused the injury. *See id.* at 261–262. In other words, Dr. Halbach does not link any alleged breach to Kristy's death, and "[a] court may not fill in gaps in a report by drawing inferences or guessing what the expert meant or intended*." See Boyles v. Corpus Christi Cardiovascular & Imaging Ctr. Mgmt.*, 622 S.W.3d 420, 426 (Tex. App.—Corpus Christi–Edinburg 2020, no pet.). In essence, Dr. Halbach simply opines that one event caused another without explaining how the alleged failure (of policies, personnel, training, and equipment available 24/7 or a neurosurgeon or doctor who can perform endovascular surgery or both) resulted in Kristy's death. *See Abshire*, 563 S.W.3d at 224. By opining that Kristy died because VBM "failed to have that

available," Dr. Halbach expressed his conclusion without stating the underlying facts necessary to establish that the failure to have "that" available was a substantial factor in Kristy's death, and that absent this failure, Kristy would not have died. *Id.* at 262; *El Paso Sw. Cardiovascular Assocs., P.A. v. Crane*, 649 S.W.3d 430, 437 (Tex. App.—El Paso 2021, no pet.) ("When a plaintiff alleges only direct liability against an employer, the expert report must implicate the employer's alleged negligent conduct."). Accordingly, we conclude the amended expert reports fail to implicate VBM's conduct.

## C.      Summary

We conclude the amended expert reports are insufficient regarding causation in relation to Nurses Cruz and White. We similarly conclude the amended expert reports are insufficient to support a vicarious liability and direct liability claim. *See Abshire*, 563 S.W.3d at 262; *El Paso Sw. Cardiovascular Assocs., P.A.*, 649 S.W.3d at 437. Therefore, the trial court abused its discretion in denying appellants' motions to dismiss. We sustain their issue*.*

### III.      CONCLUSION

We reverse the trial court's denial of appellants' motions to dismiss, and we render judgment dismissing appellees' healthcare liability claim against appellants.

JAIME TIJERINA
Chief Justice

Delivered and filed on the
9th day of July, 2026.